1  Stephen M. Harris, Bar No. 110626
   smh@kpclegal.com
2  Barry R. Gammell, Bar No. 103218
   bg@kpclegal.com
3  K.L. Myles, Bar No. 243272
   klm@kpclegal.com
4  KNAPP, PETERSEN & CLARKE
   550 North Brand Boulevard, Suite 1500
5  Glendale, California 91203-1922
   Telephone:  (818) 547-5000
6  Facsimile:  (818) 547-5329

7  Attorneys for Plaintiffs
   BRUCE EISEN, KYMMBERLI R. UREDA, LEE
8  SMITH, and FREDERICK NELSON-
   BONEBRAKE, individually, and on behalf of a
9  class of similarly situated individuals

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  BRUCE EISEN, individually, and on        )  NO.   CV11-9405 CAS (FFMx)
    behalf of a class of similarly situated  )
14  individuals,                             )  Assigned for All Purposes to
                                             )  the Honorable Christina A. Snyder -
15              Plaintiff,                   )  Ctrm 5
                                             )
16      v.                                   )  Date:            January 6, 2014
                                             )  Time:            10:00 A.M.
17  PORSCHE CARS NORTH AMERICA,              )  Ctrm:                          5
    INC.,                                    )
18                                           )
                Defendant.                   )
19                                           )  NOTICE OF MOTION AND
                                             )  MOTION FOR AWARD OF
20                                           )  ATTORNEYS FEES, COSTS, AND
                                             )  CLASS REPRESENTATIVE
21                                           )  ENHANCEMENTS;
                                             )  MEMORANDUM OF POINTS
22  _____   )  AND AUTHORITES

23      TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

24  RECORD:

25      PLEASE TAKE NOTICE THAT on January 6, 2014 at 10:00 a.m., or as soon

26  thereafter as the matter may be heard in Courtroom 5 of the above-entitled Court,

27  located at 312 North Spring Street, Los Angeles, CA 90012, Plaintiffs Bruce Eisen,

28  Kymmberli R. Ureda, Lee Smith, and Frederick Nelson-Bonebrake ("Plaintiffs") will

1  and hereby do move this Court, for entry of an order awarding attorneys' fees,

2  expenses, costs, and class representative incentive awards. Plaintiffs bring this

3  motion pursuant to Rule 23(h) of the Federal Rules of Civil Procedure on the

4  grounds that the parties' Settlement Agreement authorizes the award, which is also

5  warranted under, inter alia, the Consumers Legal Remedies Act, Civil Code section

6  1780(e), and the Private Attorney General Statute, California Code of Civil

7  Procedure Section 1021.5.

8          This Motion is based upon: (1) this Notice of Motion and Motion; (2) the

9  attached Memorandum of Points and Authorities; (3) the Declaration of Stephen M.

10 Harris; the Declaration of Colin Johns, the declaration of Jennifer M. Keough, the

11 declarations of Plaintiffs; (4) the [Proposed] Order Granting Final Approval of Class

12 Action Settlement, filed concurrently herewith; (5) the records, pleadings, and papers

13 filed in this action; and (6) upon such other documentary and oral evidence or

14 argument as may be presented to the Court at the hearing of this Motion.

15         This motion was not preceded by a meet and confer conference with defense

16 counsel pursuant to Local Rule 7-3 since Defendant does not oppose the motion.

17 Dated:  December 23, 2013                    KNAPP, PETERSEN & CLARKE

18

19                                        By: /s/ Stephen M. Harris
20                                             Stephen M. Harris
                                              Attorneys for Plaintiffs
21                                             BRUCE EISEN, KYMMBERLI R.
                                              UREDA, LEE SMITH, and
22                                             FREDERICK NELSON-
                                              BONEBRAKE, individually, and on
23                                             behalf of a class of similarly situated
                                              individuals

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.....................................3

I.    INTRODUCTION ..................................................................................3

II.   FACTS AND PROCEDURE .................................................................4

    A.    Named Plaintiffs Lease and Purchase of a Class Vehicle with an Engine Defect................................................................4

    B.    Class Members Similar Experience .........................................5

    C.    Plaintiffs' Allegations in FAC Regarding The Engine Defect.......................................................................................5

    D.    The Class Action Complaint Against PCNA...........................7

    E.    The Mediation/Settlement Agreement.....................................8

    F.    The Mediation Concerning Class Counsel's Fees And Costs........................................................................................9

    G.    Preliminary Approval...............................................................9

    H.    Investigation, Discovery and Post-Settlement Work...............9

    I.    Provision Of Settlement Relating To Fees, Costs and Enhancements ........................................................................12

    J.    Claim Administration/Notice.................................................12

III.  ARGUMENT ........................................................................................13

    A.    As The Requested Fee Is The Product Of Arm's-Length Negotiations And Will Not Reduce The Benefits To The Class, It Is Entitled To A Presumption Of Reasonableness.................13

    B.    The Fee Award Is Governed By California Law .....................15

    C.    Evaluation Of The Fee Request Under California's Lodestar-Multiplier Approach Confirms The Presumption That The Fee Is Reasonable .................................................15

    D.    Factors Used To Consider Upward Multiplier Justify The Fee In This Case...................................................................20

        1.    Plaintiffs Counsel Conferred A Significant Benefit On A Large Class Of Persons.......................................21

KNAPP,
PETERSEN
& CLARKE

////

## TABLE OF CONTENTS (cont.)

**Page**

2. Class Counsel Displayed Skill In Representing Plaintiffs' Claims and In Negotiating the Settlement ............... 22

3. Class Counsel Bore Considerable Risk and Forewent Employment Opportunities ......................................... 22

E. Multipliers Awarded By Both California And Federal Courts Demonstrate That The Fee Is Reasonable ............................... 24

F. The Additional Work Required Of Class Counsel Will Also Operate As A Negative Multiplier ....................................... 24

G. A Cross-Check Based On The Percentage Of The Fund Analysis Also Establishes The Fee Is Reasonable ............................. 24

H. The Incentive Award To The Class Representatives Is Appropriate ................................................................. 25

IV. CONCLUSION ................................................................. 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KNAPP,
PETERSEN
& CLARKE

*NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENTS: MEMORANDUM OF POINTS AND AUTHORITES*

1920078.1   08000/00944

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Carter v. Anderson Merchandisers, LP*
  EDCV 08-0025-VAP OPX,
  2010 U.S. Dist. LEXIS 55629, at *17 (C.D. Cal. May 11, 2010)......................26

*Cazares v. Saenz,*
  208 Cal.App.3d 279 (1989)...................................................................................22

*Chavez v. Netflix, Inc.,*
  162 Cal. App. 4th 43 (2008)..................................................................................24

*Craft v. County of San Bernardino,*
  2008 US. Dist. LEXIS 27526 (C.D. Cal. Apr. 1, 2008)......................................24

*Cullen v. Whitman Med. Corp.,*
  197 F.R.D. 136 (E.D. Pa. 2000) ..........................................................................25

*Daugherty v. American Honda Motor Co.,*
  144 Cal. App. 4th 824 (2006)...............................................................................23

*DeHoyos v. Allstate Corp.,*
  240 F.R.D. 269 (D. Tex. 2007) ............................................................................14

*Dunk v. Ford Motor Co.,*
  48 Cal.App.4th 1794 (1996).................................................................................16

*Edwards v. Ford Motor Co.,*
  2012 WL 2866424 (S.D. Cal. June 12, 2012)......................................................23

*Garst v. Franklin Life Ins. Co.,*
  1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999).................................14

*Gates v. Deukmejian,*
  987 F.2d 1392 (9th Cir. 1993)..............................................................................19

*Gezalyan v. BMW of North America,*
  LLC, 697 F. Supp. 2d 1169 (C.D. Cal. 2010) .....................................................15

*Graham v. DaimlerChrysler Corp.,*
  34 Cal. 4th 553,578 (2004)...................................................................................21

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Hoirup v. Prof'l Eng'rs in Cal. Gov't,*
   2006 U.S. Dist. LEXIS 73814 (E.D. Cal. 2006) ................................. 13

*Hopson v. Hanesbrands Inc.,*
   CV-08-0844 EDL, 2009 U.S. Dist. LEXIS 33900 (N.D. Cal. Apr. 3, 2009) .... 26

*In re Bridgestone/Firestone, Inc.,*
   288 F.3d 1012 (7th Cir. 2002) ................................................ 23

*In re Businessland Sec. Litig.,*
   1991 WL 427887 (N.D. Cal. June 14, 1991) ............................... 17fn.

*In re Consumer Privacy Cases,*
   175 Cal. App. 4th 545 (2009) ......................................... 20fn., 24

*In re Continental Illinois Securities Litigation,*
   962 F.2d 566 (7th Cir. 1992) ................................................ 14

*In re First Capital Holdings Corp. Financial Products Securities Litigation,*
   1992 U.S. Dist. LEXIS 14337 (C.D. Cal. 1992) ........................... 13, 14

*In Re General Motors Dex-Cool Products Liability Litigation,*
   241 F.R.D. 305 (S.D. Ill. 2007) ............................................. 23

*In re Mega Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ................................................ 26

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ................................................ 18

*Ketchum v. Moses,*
   24 Cal.App. 1122 (2001) .................................................... 20

*Lealao v. Beneficial California,*
   82 Cal.App.4th 19 (2000) ................................... 16, 20, 21, 22

*LeBlanc-Sternberg v. Fletcher,*
   143 F.3d 748 (2nd Cir. 1998) ............................................... 18

*Mangold v. California Public Utilities Commission,*
   67 F.3d 1470 (9th Cir. 1995) ............................................... 15

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Minor v. Christie's, Inc.*,
   2011 WL 902235 (N.D. Cal. 2011)...................................................... 19

*Ramos v. Countrywide Home Loans, Inc.*
   82 Cal.App.4th 615, 622 (2000)...................................................... 16

*Samuel-Bassett v. Kia Motors America, Inc.*,
   34 A.3d 1 (Penn. Dec. 2, 2011)........................................................ 23fn.

*Serrano v. Priest ("Serrano II")*,
   20 Cal. 3d 25 (1977).................................................. 15, 16, 20, 22

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)........................................................ 25

*U.S. v. Ford Motor Corp.*,
   453 F. Supp. 1240 (D. D.C. 1978) ................................................5fn.

*United States v. Ford Motor Co.*,
   421 F. Supp. 1239 (D.D.C. 1976) ................................................5fn.

*United States v. General Motors Corp.*,
   417 F. Supp. 933 (D.D.C. 1976) ................................................5fn.

*US. v. General Motors Corp.*,
   518 F.2d 420,427 (C.A.D.C. 1975).............................................5fn.

*Van Vraken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (ND. Cal. 1995).............................................. 26

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 U.S. Dist. LEXIS 114597 (N.D. Cal. Aug. 8, 2012)................................. 26

*Vizcaino v. Microsoft Corp*,
   290 F.3d 1043 (9th Cir. 2002)........................................................ 25

*Vo v. Las Virgines Mun. Water Dist.*,
   79 Cal.App.4th, 440, 446 (2000)...................................................... 16

*Wash. Publ Power Supply Sys. Litig.*
   19 F.3d 1291,1295 n.2 (9th Cir. 1994)........................................ 24

-v-

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Weeks v. Baker & McKenzie,*
    63 Cal. App. 4th 1128 (1998)..................................................................16

*Wershba v. Apple Computers Inc.,*
    91 Cal.App.4th 224 (6th Dist. 2001) ..............................................16, 24

*X-Ray Film Antitrust Litig.*
    1998 WL 1031494 at *11 (Oct. 22, 1998) ......................................17fn.


**STATUTES**

California Code of Civil Procedure Section 1021.5 ...............................15

California Civil Code Section 1780(d)......................................................15

California Business & Professions Code Section 17200 et seq. ...........15

**MISCELLANEOUS**

Leubsdorf, *The Contingency Factor In Attorney Fee Awards,*
    90 Yale L.J. 473, 480 (1981)...................................................................23

Federal Rule of Civil Procedure 23(h) ....................................................15

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS FEES, COSTS, AND CLASS
REPRESENTATIVE ENHANCEMENTS: MEMORANDUM OF POINTS AND AUTHORITES

1920078.1   08000/00944

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Bruce Eisen, Kymmberli R. Ureda, Lee Smith, and Frederick Nelson-Bonebrake ("Plaintiffs") have brought this action on behalf of themselves and a nationwide class of over 57,900 current and former owners and lessees of certain 2001 through 2005 Porsche Boxster vehicles and certain 2001 through 2005 Porsche 911 vehicles distributed and sold by defendant Porsche Cars North America, Inc. ("PCNA", "Porsche", or "Defendant"). They allege that defects in the design, manufacture, and assembly of the engines installed in the class vehicles resulted in mechanical failures in the Class Vehicles. Plaintiffs further allege that the mechanical failure is due to an intermediate shaft ("IMS") condition which causes engine failure, or engine damage ("Engine Defect") (Docket No. 26, First Amended Complaint ["FAC"] FAC ¶ 6).

Plaintiffs and PCNA settled the nationwide class claims, and this court granted preliminary approval of the settlement in April of 2013. As part of the settlement, PCNA has agreed to reimburse or compensate class members who have, or will, incur costs in connection with repairing or replacing an engine when said damage is or has been caused or contributed to by the IMS, subject to certain time and mileage limitations. PCNA will also pay limited out-of-pocket costs for towing and/or a replacement rental vehicle. PCNA's obligations are based upon the payment and reimbursement schedule in the Settlement Agreement and Release ("Agreement" or "Settlement") attached as exhibit 1. (See, Exhibit 1 to Declaration of Stephen M. Harris ("Harris Decl., § III, ¶ 4(j).)

The settlement provides Class Members with remedies similar to what they could expect to receive if the case were successfully tried, but without the delay and risks associated with trial, and it should therefore be approved.

Plaintiffs now move for approval of their attorneys fees and costs (in the amount of $950,000) and for class representative awards for each Plaintiff of $3,750,

1  which were items negotiated at a separate mediation only after all other aspects of

2  the Settlement were agreed to by the parties. The parties ultimately agreed that,

3  subject to Court approval, Defendant would pay attorneys' fees, expenses, and costs

4  OF up to $950,000. (See Agreement, pp. 23-25, ¶¶ 19, 23-24.)

5       The Court's function under Rule 23(h) is to ensure that the parties' agreement

6  on fees and expenses is reasonable and does not reflect a collusive settlement that

7  places the interests of counsel above the interests of the Class. Here, the parties

8  carefully separated their negotiations for class recovery from their negotiation for

9  attorneys' fees and expenses so there is no possibility of collusion. Moreover, the

10  maximum amount Plaintiffs can request under the Agreement is reasonable under

11  California's lodestar/multiplier approach to calculating an appropriate fee award.

12  Indeed, as established herein, when the costs of Plaintiffs counsel are subtracted from

13  the sum of $950,000, counsel will receive a negative multiplier for their services.

14       The modest enhancements of $3,750 for each of the four Plaintiffs are also

15  reasonable and an appropriate reward for their services in this case.

16  **II.    FACTS AND PROCEDURE**

17  **A.    Named Plaintiffs Lease and Purchase of a Class Vehicle with an Engine**

18  **Defect**

19       All of the named Plaintiffs, Plaintiff Bruce Eisen ("Eisen") Kymmberli R.

20  Ureda ("Ureda") Lee Smith ("Smith") and Frederick Nelson-Bonebrake ("Nelson-

21  Bonebrake") owned or leased Class Vehicles. All of these Porsche Vehicles suffered

22  from catastrophic engine failures necessitating engine repairs and/or replacement

23  costs. (Docket No. 26, First Amended Complaint ["FAC"] ¶¶ 22-33.) PCNA refused

24  to pay for or reimburse Plaintiffs for the cost of these repairs/engine replacements.

25  (*Id.*)

26       All Class Vehicles when purchased new came with a New Car Limited

27  Warranty covering defects in the materials and workmanship for a period of 50,000

28  miles or four (4) years, whichever occurs first. Certain Class Vehicles were

1  purchased with a Porsche Approved Certified Pre-Owned Limited Warranty

2  ("ACPO") covering defects in materials and workmanship for a period of up to six

3  (6) years or a cumulative 100,000 miles from the original in-service date, which-

4  ever occurs first, if the vehicle was still under the New Car Limited Warranty at

5  time of purchase; or coverage for two (2) years or 50,000 miles from the used retail

6  purchase but not to exceed 100,000 total vehicle miles, whichever occurs first, for

7  vehicles purchased outside the New Car Limited Warranty. (Harris Decl., ¶ 28.)

8  **B.    Class Members Similar Experience**

9          Porsche adopted a single row design for the IMS in 2001. Warranty claims of

10 owners of Porsche vehicles with this design of the IMS (all Class Vehicles) spiked

11 up to between 4% to 8% of all such Vehicles in the United States, and 4% to 10% of

12 all Class Vehicles in California. Warranty claims for Porsche Boxster and 911

13 vehicles relating to IMS issues, which had different versions of the IMS, have

14 uniformly involved claims of far less than 1% of such vehicles.[1] Indeed, to date,

15 Porsche has spent over $20,000,000 reimbursing customers for the parts and labor

16 necessary to repair vehicles experiencing engine failure as a result of the defective

17 IMS shaft. (This entails approximately 3,100 claims granted under warranty or good

18 will.) (See, Harris Decl., ¶ 16; Johns Decl., ¶¶ 14-15.)

19 **C.    Plaintiffs' Allegations in FAC Regarding The Engine Defect**

20         The Class Vehicles are equipped with the IMS, which is located at the bottom

21 portion of the inside of the Class Vehicles engines. (FAC ¶ 7.) The IMS rotates in a

22 high rate of speed in correlation with the rotation of the engine. (*Id.*) In order to

23 _____

24 [1] See *US. v. General Motors Corp.*, 518 F.2d 420,427 (C.A.D.C. 1975) (defect exists where a significant (i.e., non-"de minimus") number of failures occur); *U.S. v. Ford Motor Corp.*, 453 F. Supp. 1240, 1243, 1246 (D. D.C. 1978) (finding existence of

25 defect based on replacement-part sales data); *United States v. Ford Motor Co.*, 421 F. Supp. 1239, 1241-42 (D.D.C. 1976) (existence of defect based on warranty return

26 rate of 2%); *United States v. General Motors Corp.*, 417 F. Supp. 933, 938 (D.D.C. 1976) (GM stipulates that 300 fires in population of 375,000 vehicles constituted a

27 significant number on which to base finding of defect), aff'd, 565 F.2d 754 (D.C. Cir. 1977).

28

1  reduce vibration in the engine, the IMS is held in place by an intermediate shaft

2  bearing. (FAC ¶ 8.) The intermediate shaft bearing is pressed into the engine block

3  and is a part which is designed so that the outer circumference of the part can remain

4  stationary, pressed into the block, while the inner portion of the part, which holds the

5  IMS, is able to rotate in a stable manner, at a high speed. (*Id.*) Failures (including

6  catastrophic failures) occur due to the fact that the IMS is not sufficiently robust to

7  reliably operate without failure, for the anticipated life of the IMS. (FAC ¶ 10.) The

8  IMS is not a part that is supposed to be serviced, meaning that the part should remain

9  functional for the anticipated life of the engine. (*Id.*) The IMS does with high

10  frequency fail during the time period of the useful life of the engine. (*Id.*)

11       Due to the location of the IMS within the engine, this deterioration process is

12  not visible without removing major engine components, and generally has no visible

13  or audible warning signs prior to eventual catastrophic or other engine failure. (FAC

14  ¶ 13.) As a result of the Engine Defect, the engine can either lose power or seize,

15  causing the vehicle to lose forward propulsion and the power steering and power

16  braking system will no longer function, making it extremely difficult to steer or stop,

17  and the vehicle ultimately breaks down and stops. (FAC ¶ 14.)

18       The Class Vehicles consist of certain model year 2001 - 2005 Porsche Boxster

19  vehicles, and certain 2001-2005 Porsche 911 vehicles, as more fully described in the

20  Agreement. (Agreement § I, ¶¶ a, b.) Approximately 57,929 Class Vehicles were

21  sold in the United States. (Agreement § II, ¶ 2.) Approximately 30% of the Class

22  Vehicles were sold in California.  (Harris Decl. ¶ 7.)

23       The costs of the Engine Defect to consumers can be exorbitant because con-

24  sumers will be required to pay thousands of dollars both to diagnose and repair the

25  Engine Defect and to repair the extensive damage that it causes to a vehicle's engine.

26  (FAC ¶ 16.) Additionally, the presence of the Engine Defect in the Class Vehicles

27  resulted in the vehicles having diminished value, thereby depriving Plaintiffs and the

28  Class Members of the benefit of the vehicle (and its value) that they paid for. (*Id.*)

1   Plaintiffs allege PCNA was aware of the Engine Defect before Plaintiffs
2   purchased their Class Vehicles through sources not available to Plaintiffs or Class
3   Members, including but not limited to pre-release testing data, early consumer and
4   dealer complaints about the Engine Defect to PCNA, testing conducted in response
5   to those complaints, aggregate data from PCNA's dealers (such as warranty data,
6   goodwill data, repair data and parts purchases), reports from the National Highway
7   Transportation and Safety Administration ("NHTSA"), and from other internal and
8   external sources.  (FAC ¶¶ 17, 18.) .
9   Warranty claims of owners of Porsche vehicles with this design of the IMS (all
10  Class Vehicles) dramatically rose to between 4% to 8% of all Class Vehicles in the
11  United States, and to between 4% to 10% of all such Vehicles in California. Indeed,
12  to date, Porsche has spent over $20,000,000 reimbursing its customers for the parts
13  and labor necessary to repair vehicles experiencing engine failure as a result of the
14  defective IMS shaft. (This entails approximately 3,100 claims granted under
15  warranty or good will.) (See, Harris Decl., ¶ 16; Johns Decl., 14-15.)
16  Despite PCNA being on notice of the defect from various internal and external
17  sources, Porsche has not recalled the Class Vehicles to repair the Engine Defect, has
18  not offered all of the owners and lessees of Class Vehicles a suitable permanent
19  repair or vehicle replacement free of charge, and has not offered to reimburse all
20  owners and lessees of Class Vehicles who incurred costs relating to the Engine
21  Defect, including costs related to inspections/diagnosis, and repair of the Class
22  Vehicles. (FAC ¶ 20.)
23  **D.   The Class Action Complaint Against PCNA**
24  On November 10, 2011, Eisen brought a class action against PCNA on behalf
25  himself and a class of California consumers alleging (1) violations of California
26  Consumer Legal Remedies Act, (2) violations of California Unfair Business
27  Practices Act, and (3) fraud.  (Docket No. 1.)  On January 11, 2012, PCNA moved to
28  dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b) and 9(b) (6).

1   (Docket No. 8.) The Court granted the motion to dismiss with leave to amend.
2   (Docket No. 14.) On October 10, 2012, the FAC was filed by Eisen, Ureda, Smith,
3   and Nelson-Bonebrake as a putative nationwide class action on behalf of themselves
4   and all other Class Members similarly situated for (1) breach of express warranties,
5   (2) violation of State consumer protection statutes, and (3) breach of implied
6   warranty of merchantability. (Docket No. 26.) Plaintiffs plead a class of "all persons
7   throughout the United States who currently own or lease a Class Vehicle and who
8   have sustained damages as a result of an engine failure due to the Engine Defect"
9   ("Class") and "all persons throughout the United States who previously owned or
10  leased a Class Vehicle and who have sustained damages as a result of an engine
11  failure due to the Engine Defect". (Docket No. 26, FAC ¶¶ 83, 84.)[2]

12  **E.    The Mediation/Settlement Agreement**

13          On August 22, and August 23, 2012, the parties participated in two full day
14  mediation sessions with the honorable Edward J. Wallin. At that time, only Eisen
15  was a named Plaintiff.  The parties were able to agree on all aspects of the settlement
16  (other than attorneys' fees, costs, and enhancements) after these two day sessions,
17  including agreement to a nationwide class for settlement purposes only, and signed a
18  document titled "*Eisen v. Porsche Settlement Terms*" after the conclusion of these
19  negotiation sessions. After the mediation, Plaintiffs submitted a First Amended
20  Complaint which included the additional Plaintiffs, Ureda, Smith and Nelson-
21  Bonebrake as additional parties. The parties later came to agreement on November
22  12, 2012 with respect to the total enhancements payable to the class representatives
23  (subject to court approval) and also modified the settlement previously agreed to in
24  order to increase the mileage limitation aspect of the Agreement. (Harris Decl., ¶ 17.)
25
26  ───────────────
    [2] The operative pleading referred to a class and sub-class, but both classes are
27  combined for purposes of the settlement.  (Settlement Agreement, § III, ¶ 19; FAC,
    ¶ 84.)
28

1    The parties thereafter were able to negotiate the language of the formal

2  Agreement, claim form, and notice. (*Id.*, ¶ 18.)

3    On October 23, 2012, the Court granted the parties' stipulation to extend the

4  time for PCNA to file its response to the FAC to December 24, 2012 for settlement

5  purposes. (Docket No. 30.)  In their stipulation, the parties advised the Court that

6  following successful negotiations, the parties had agreed to all of the terms of the

7  Settlement Agreement as it relates to the Class and Class Members, including the

8  terms of the Class Notice and Claim Form, and the amount of incentive awards for

9  the Representative Class Plaintiffs, with the only issue remaining unresolved being

10 attorneys' fees and costs.  (Docket No. 29 ¶ 2.) On December 27, 2012, this court

11 entered an order vacating the deadline for PCNA to file an answer. (Docket No. 30.)

12 **F.    The Mediation Concerning Class Counsel's Fees And Costs**

13   On February 4, 2013, the parties participated in an additional mediation with

14 the Honorable Edward J. Wallin. (Harris Decl. ¶ 21.)  The mediation was successful

15 as the parties agreed that PCNA would not to oppose a petition on behalf of class

16 counsel for attorneys' fees, and verifiable costs, in a total amount not to exceed

17 $950,000.00.  (Agreement § III, ¶ 19.) The requested amount is in addition to the

18 benefits PCNA will provide to Class Members under the terms of the Settlement and

19 thus will not reduce the class benefits provided for under the Settlement. *Id.*

20 **G.    Preliminary Approval**

21   On April 24, 2013, the court granted preliminary approval of the Settlement.

22 (Docket 42.) The court certified the Settlement Class as defined in its Order and the

23 Agreement, appointed Plaintiffs as the Class Representatives, appointed Stephen M.

24 Harris as Class Counsel, and found that the settlement terms were, at least

25 preliminarily, sufficiently fair, reasonable and adequate so as to justify dissemination

26 of notice to class members. (*Id.*)

27 **H.    Investigation, Discovery and Post-Settlement Work**

28   Plaintiffs conducted a pre-filing and post-filing investigation, including, but

1  not limited to, retaining an expert consultant regarding IMS failures, legal research

2  regarding the issues in the case, review of technical service bulletins, review of

3  publicly available information relating to the nature and extent of the IMS problem,

4  and obtaining, reviewing and summarizing over 4,000 pages of IMS related

5  documents produced by PCNA. Plaintiffs have also reviewed the status of other

6  lawsuits, including settlement thereof, communicated with class members, and

7  monitored complaints on NHTSA. Plaintiffs also deposed Alan Butler in May of

8  2012 (regarding warranty and warranty claim data) and Steffan Reinert (concerning

9  the technical aspects of the IMS problems) in July of 2012. (Harris Decl., ¶¶ 8-10.)

10       Class counsel also undertook an effort to publicize the settlement and have

11  received inquiries both from class members and from such areas as Australia, Canada

12  and New Zealand. We also communicated with 79 independent Porsche repair

13  facilities to advise them of the settlement terms, hired a vendor to create a web-site

14  concerning the settlement, drafted the web site data, and made arrangements with the

15  following vendors for publication of articles concerning the class action settlement:

16  Rennlist, Pelican Parts, Plant 9 and Internet Brands.[3] The web site also created a blog

17  (publishing several articles about settlement issues), and facebook and twitter

18  accounts to notify class members of the settlement. (*Id.*, ¶¶ 10-11.)

19       From July 2013 to December 16, 2013, there were 30,447 visits to our

20  settlement web site, 24,973, unique individuals viewed the site and there were 61,608

21  page views. In addition to the web site, KPC devoted staff personnel to field

22  inquiries from potential class members. These staff members, up to December 9,

23  2013, participated in 770 written communications and 1,547 telephone calls with

24  potential class members.[4] (*Id.*, ¶ 11.)

25

26  [3] In addition, we hired Google Adwords for the purpose of ensuring that class
    members could find our web site when conducting internet searches. *Id.*, ¶ 10.

27

28  [4] Class counsel, including Mr. Harris and Ms. Myles, also participated in multiple
                                                              (Continued...)

1920078.1  08000/00944

Class members were grateful for these efforts. For example:

- Larry Leibrock: An Afghanistan war veteran who could not retrieve his repair paperwork from the Porsche dealership in Arlington, VA. He spoke with the service manager multiple times and the service manager denied the existence of any repair records. As a result of our efforts to assist him Mr. Leibrock submitted a claim and offered to testify in court on our behalf;

- Rose Horan: She experienced an oil leak within the ten year window but when she called the Porsche 800 number, they refused to grant her an inspection because her vehicle was outside of the ten year window.  After our efforts to assist her, Porsche granted the inspection. She was grateful for our help and thanked us for "saving her life".

- Marites Serna Burke: She expressed gratitude at our efforts to assist her with respect to the amount she is eligible to be awarded since "no one else" was willing to assist her. (*Id.*, ¶¶ 11-12.)

Class counsel will also participate in appealing denial of claims in the future. Moreover, Class counsel is in the process of reviewing the notices of deficiency and rejection by the claims administrator and assisting class members with curing any deficiencies or obtaining a withdrawal of the notices of deficiency or rejection. And class counsel has already succeeded in such efforts. Specifically, the deficiency and rejection notices were transmitted on December 6th, and as of December 18th, class counsel had succeeded in resolving 10 notices of deficiency or rejection in favor of the class members, and was communicating with the claims administrator and class members about multiple other such notices. (*Id.*¶¶ 13-15.)

Class counsel has also raised and in substantial part resolved a series of issues

---

(...Continued)
follow up calls and written communications with actual and potential class members.

1   with defense counsel relating to obtaining settlement benefits for class members.

2   (See, exhibit 2 to Harris Decl., and Harris Decl., ¶ 14.) Finally, Class counsel will

3   continue to communicate with class members after final approval, relating to

4   rectifying notices of deficiency or rejection, and appealing denial of claims. Since

5   settlement benefits can be extended to Class Vehicles after final approval, class

6   counsel's role will continue well after the final approval hearing date. (*Id.*, ¶ 15.)

7   **I.      Provision Of Settlement Relating To Fees, Costs and Enhancements**

8           The Agreement provides that PCNA shall not oppose Plaintiffs application for

9   fees and costs of $950,000, or for representative enhancements of $3,750 for each

10  Plaintiff. This Agreement was negotiated only after all other aspects of the case were

11  resolved. (Agreement, ¶¶ 19, 27; pp. 23-25; Harris Declaration, ¶¶ 17-18, 21.)

12  **J.      Claim Administration/Notice**

13          The claims administrator furnished Notice to 235,152 potential class members.

14  To date, approximately 3,275 claims have been received, with a claims amount

15  totaling $4,155,536.08. Presently, a total of 475 pre-notice claims and 33 post-notice

16  claims[5] have been approved for payment in the amount of $2,178,377. Moreover,

17  Plaintiffs estimate that the total value of the settlement is $5,957,740, including

18  anticipated future claims, deficiencies which are cured, and future repair costs

19  averted by virtue of the notice.[6] In contrast, there have only been 243 opt outs and 53

20  objections[7], thus indicating that the class approves the settlement entered into by the

21  parties. (Harris Decl., ¶¶ 24-27; Keough Decl., ¶¶ 5, 9-12; Johns Decl., ¶¶ 1-42.)

22  _____

23  [5] PCNA has approved three additional post-notice claims in the amount of
    $61,460.15. PCNA also has advised counsel for Plaintiffs that an additional 11 post
24  notice claims have been made, which Plaintiffs estimate are worth approximately
    $187,000 to $220,000. (Harris Decl., ¶ 24.)

25  [6] This does not include the present and future amount of claims administration
26  expenses of $370,000. (Harris Decl., ¶ 24; Keough Decl., ¶¶ 13-14.)

27  [7] Plaintiffs address the objections in a separate document. The objections are not well
    taken.

28

1920078.1   08000/00944

III.   **ARGUMENT**

A.     **As The Requested Fee Is The Product Of Arm's-Length Negotiations And Will Not Reduce The Benefits To The Class, It Is Entitled To A Presumption Of Reasonableness**

The requested fee was negotiated at arm's length by counsel experienced in the prosecution and resolution of complex, consumer class action litigation. Counsel for both sides aggressively litigated this case, and were thus in an ideal position to assess the risks for both sides, the nature of the result obtained for the class, and the magnitude of the fee the Court might award were the parties to litigate the issue of attorneys' fees. These fee negotiations commenced only after the parties had settled on the relief for the class. ( Harris Decl., ¶¶ 17-18, 21.) Accordingly, there is no risk that the fee agreement was obtained through improper compromise of the underlying claims of the absent class members. *Hoirup v. Prof'l Eng'rs in Cal. Gov't*, 2006 U.S. Dist. LEXIS 73814, at *9 (E.D. Cal. 2006). Unlike in common-fund settlements, where defendants aim to minimize the total amount of the fund and have little concern how that fund is allocated between the class and their counsel, the Defendant in this case had a keen interest in negotiating the smallest amount of attorneys' fees it would have to pay. Defendant had already committed to provide certain relief to class members, and the fee it agreed to pay to Plaintiffs counsel would only increase its total outlay.

Under these circumstances, the parties' arm's-length, negotiated fee is entitled to a presumption of reasonableness.  As the court explained in *In re First Capital Holdings Corp. Financial Products Securities Litigation*, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. 1992), in awarding a negotiated fee of $8 million, "[t]he fee was negotiated at arm's length with sophisticated defendants by the attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class." *Id.* at *13.  "Where there is such arm's length negotiation and there is no evidence of self-dealing or disabling conflict

-13-

1  of interest, the Court is reluctant to interpose its judgment as to the amount of
2  attorneys' fees in the place of the amount negotiated by the adversarial parties in the
3  litigation." *Id.*; *see also Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS
4  22666, at **81-82 (N.D. Ala. June 25, 1999) (in awarding $12.2 million negotiated
5  fee, "[t]he Court finds that the fee and expense negotiations were conducted at arm's
6  length, only after the parties had reached agreement on all terms of the Settlement.
7  There is absolutely no evidence in this case that the Settlement, or the fee and
8  expense agreement, was in any way collusive. Under these circumstances, the Court
9  gives great weight to the negotiated fee in considering the fee and expense request.");
10 *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (D. Tex. 2007) ("[C]ourt need not review
11 an application for attorneys' fees with heightened scrutiny where, as here, parties
12 have contracted for an award of fees which will not be paid from common fund."
13 (citing *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006).)
14        The virtue of a fee negotiated by the parties at arm's length is that it is, in
15 effect, a market-set price. Defendant has an interest in minimizing the fee; Plaintiff
16 has an interest in maximizing it; and the negotiations are informed by the parties'
17 knowledge of the work done and result achieved and their views on what the court
18 might award if the matter were litigated. In *In re Continental Illinois Securities*
19 *Litigation*, 962 F.2d 566 (7th Cir. 1992), Judge Posner of the Seventh Circuit
20 encouraged just such a market-based analysis in evaluating fee requests. "[I]t is not
21 the function of judges in fee litigation to determine what the lawyer would receive if
22 he were selling his services in the market rather than being paid by court order." *Id.*
23 "Markets know market value better than judges do." *Id.* at 570. "The object in
24 awarding a reasonably attorney's fee ... is to give the lawyer what he would have
25 gotten in the way of a fee in an arms' length negotiation, had one been feasible." *Id.*
26 at 572. Here, such a negotiation *was* feasible, and was conducted through
27 contentious interplay between the parties. The resulting agreement, informed by
28 Defendant's own knowledge of the litigation and the results achieved by Plaintiffs'

-14-

1  counsel, as well as their intimate familiarity with their own attorneys' fees,

2  accurately reflects the market value of the services performed by Plaintiffs' counsel.

3  **B.    The Fee Award Is Governed By California Law**

4        At the conclusion of a successful class action, Plaintiffs' Counsel may apply to

5  the Court for an award of "reasonable attorney's fees and nontaxable costs that are

6  authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, fees are

7  provided for by the parties' agreement and are also governed by state law. *Gezalyan*

8  *v. BMW of North America*, LLC, 697 F. Supp. 2d 1169 (C.D. Cal. 2010) ("In

9  diversity actions, federal courts look to state law in determining whether a party has a

10  right to attorneys' fees and how to calculate those fees."); *Mangold v. California*

11  *Public Utilities Commission*, 67 F.3d 1470, 1478 (9th Cir. 1995).

12  **C.    Evaluation Of The Fee Request Under California's Lodestar-Multiplier**

13       **Approach Confirms The Presumption That The Fee Is Reasonable**

14        Plaintiffs seek attorneys' fees pursuant to California's Consumers Legal

15  Remedies Act ("CLRA"), Cal. Civ. Code Section 1780(d), and the "private attorney

16  general doctrine," which has been codified at Section 1021.5 of the California Code

17  of Civil Procedure. The CLRA requires a court to award attorneys' fees and costs to

18  a prevailing plaintiff in litigation. Additionally, under Cal. Code of Civ. Proc. §

19  1021.5, a court may award attorneys' fees to a successful party in an action resulting

20  in the enforcement of an important right affecting the public interest, such as the

21  enforcement of the CLRA or the California Unfair Competition Law, Business &

22  Professions Code Section 17200 et seq. (claims asserted in this case), if, among other

23  things, a significant benefit has been conferred, pecuniary or nonpecuniary, on the

24  general public or a large class of persons. *See* Cal. Code of Civ. Proc. § 1021.5.

25        California courts follow the lodestar-multiplier method for calculating the

26  attorneys' fee award. *See Serrano v. Priest ("Serrano II")*, 20 Cal. 3d 25, 48-49

27  (1977). Under this approach, "[t]he lodestar (or touchstone) is produced by

28  multiplying the number of hours reasonably expended by counsel by a reasonable

1    hourly rate." *Lealao v. Beneficial California*, 82 Cal.App.4th 19, 26 (2000). "Once

2    the court has fixed the lodestar, it may increase or decrease that amount by applying

3    a positive or negative 'multiplier' to take into account a variety of other factors,

4    including the quality of the representation, the novelty and complexity of the issues,

5    the results obtained, and the contingent risk presented." *Id.* at 26; *see also Serrano*

6    *III*, 20 Cal. 3d at 48-49; *Ramos v. Countrywide Home Loans*, Inc., 82 Cal.App.4th

7    615, 622 (2000).

8          Class Counsel is entitled to recover fees for all hours reasonably spent working

9    on the case. *Vo v. Las Virgines Mun. Water Dist.*, 79 Cal.App.4th, 440, 446 (2000)

10   ("Under the lodestar method, a party who qualifies for a fee should recover for all

11   hours reasonably spent unless special circumstances would render the award unjust.

12   "); *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1175 (1998) ("an attorney

13   who takes on [a complex] case can anticipate receiving full compensation for every

14   hour spent litigating a claim against even the most polemic opponent.").

15         A lodestar calculation need not be supported by detailed time records. *See*

16   *Wershba v. Apple Computers Inc.*, 91 Cal.App.4th 224, 255 (6th Dist. 2001)

17   ("California case law permits fee awards in the absence of detailed time sheets").

18   Declarations by counsel as to time spent, even if only estimates, are enough. *See id.*

19   ("Here plaintiffs' attorneys submitted declarations evidencing the reasonable hourly

20   rate for their services and establishing the number of hours spent working on the

21   case"); *see also Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1810 (1996) (stating

22   that lodestar calculation could be based on counsel's estimate of time spent). "An

23   experienced trial judge is in a position to assess the value of the professional services

24   rendered in his or her court." *Wershba*, 91 Cal.App.4th at 255.

25         Plaintiffs' counsel seeks compensation for approximately its present lodestar

26   of $879,705, as well as the value of the time that will be spent in the future

27   ($192,500) for a total lodestar of $1,072,205.  (Harris Decl. at ¶¶ 30-44.) Moreover,

28   Class Counsel has incurred costs of $48,644.64, which are to be deducted from the

-16-

1  fee award.[8] Thus, after deduction of costs, the award of fees and costs of $950,000

2  represents a negative multiplier.[9]

3      As previously described *supra*, and presented in detail in the accompanying

4  Harris declaration, Plaintiffs' counsel spent significant time and effort in prosecuting

5  the claims against Defendant.  These efforts included:

6  • Drafting of the Complaint and First Amended Complaint;

7  • Legal Research;

8  • Responding to Motion to dismiss;

9  • Participation in settlement negotiations and drafting settlement agreement,

10  notice, and claim form;

11  • Preparing the Preliminary and Final Approval Motion, Fee Application and

12  Response to Objections[10];

13  • Consulting an expert concerning IMS failures;

14  • Retaining damage expert;

15  • Review of technical service bulletins;

16  • Review of publicly available information relating to the nature and extent

17  of the IMS problem;

18  • Obtaining, reviewing and summarizing over 4,000 pages of IMS related

19  documents produced by PCNA;

20

21  [8] Attorneys in a class action may be reimbursed for costs incurred "in the ordinary

22  course of prosecuting [a] case" in addition to attorneys' fees incurred. See *X-Ray Film Antitrust Litig.*, 1998 WL 1031494 at *11 (Oct. 22, 1998) (awarding class

23  counsel $29,051.40 in costs and expenses); *see also In re Businessland Sec. Litig.*, 1991 WL 427887 at *3 (N.D. Cal. June 14, 1991) (awarding class counsel

24  $90,574.78 in costs and expenses in addition to attorneys' fees).

25  [9] Matthew Mendelsohn is to receive 15% of any fee award as a referral fee. Harris Declaration, ¶ 36.

26  [10] Time spent subsequent to December 16, on the fee application, motion for final

27  approval and response to objections is not included in the value of the lodestar to date.

28

1   • Communications between counsel for Plaintiffs, and staff members;

2   • Review of status of other lawsuits, including settlement thereof;

3   • Communications with class members before and after litigation was

4      commenced;

5   • Monitoring and summarizing NHTSA complaints;

6   • Deposing Alan Butler and Steffan Reinert;

7   • Concerted effort to publicize settlement;

8   • Communication with 79 independent Porsche repair facilities to advise

9      them of the settlement terms;

10  • Hiring and interfacing with a vendor to create a web-site concerning the

11     settlement, drafting content of site, and making arrangements with the

12     following vendors for publication of articles concerning the class action

13     settlement: Rennlist, Pelican Parts, Plant 9 and Internet Brands;

14  • Retaining Google Adwords to assist settlement members in locating website;

15  • Communications with class members regarding their actual and potential

16     claims and questions;

17  • Assisting class members with responding to notices of rejection and

18     deficiencies;

19  • Future work consisting of further assistance of class members, including

20     appeal work;

21  • Communication with defense counsel and claims administrator regarding

22     settlement issues and claims administration;

23      At the hourly rates charged by Plaintiffs counsel in this case, their lodestar is

24  $1,072,205. (*See id.*, at ¶¶ 38-44.)  Calculating the lodestar using Plaintiffs' current

25  rates is appropriate given the deferred nature of counsel's compensation. *See*

26  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates,

27  rather than historical rates, should be applied in order to compensate for the delay in

28  payment .... ") (*citing Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re*

-18-

1    *Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)

2    ("The district court has discretion to compensate delay in payment in one of two

3    ways: (1) by applying the attorneys' current rates to all hours billed during the course

4    of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate

5    enhancement.").

6          Plaintiffs counsel's rates are commensurate with their current, customary rates

7    for non-contingent matters, and consistent with the rates charged by both Plaintiffs[11]

8    and defense firms in the Los Angeles area, and around the country. (See Harris Decl.

9    at ¶¶ 31-34, 36, 43; Exhibits 6-8 to Harris Decl.) The relevant market for the billing

10   rates in this case is the area comprising the Central District of California. E.g., *Gates*

11   *v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993). Class Counsel's rates are well

12   within those permissible for attorneys practicing in this market. (See Harris Decl.,

13   ¶¶ 31-34, 36, 43; Exhibits 6-8 to Harris Decl.) In determining what constitutes a

14   reasonable rate, courts have often reviewed the National Law Journal's survey of

15   billing rates. See, e.g., *Minor v. Christie's, Inc*., 2011 WL 902235, at **7-8 (N.D.

16   Cal. 2011) (approving partner rates of $700 and $600 an hour).)

17         The National Law Journal Survey and other evidence establishes that rates

18   charged by other firms in California are either commensurate with, or even exceed,

19   those charged by Class Counsel. Given the foregoing, ample evidence exists

20   establishing that Class Counsel's rates are reasonable for the market area comprising

21   the Central District of California. Accordingly, Plaintiffs' counsels' lodestar is

22   reasonable and should be approved.

23

24

25   _____

26   [11]   The hourly fees charged by Plaintiffs' counsel are commensurate with fees
     approved for other class action firms practicing in this market, with rates as high at
27   $750 per hour having been approved by trial courts for plaintiff class action firms
     practicing in California. *See* Harris Decl., ¶ 34).

28

**D.**  **Factors Used To Consider Upward Multiplier Justify The Fee In This Case**

It has been established that the $950,000 fee represents a negative multiplier in the circumstances of this case. However, California law permits fee enhancements under state statutes authorizing an award of attorneys' fees to the prevailing party. *See Serrano III*, 20 Cal. 3d at 49; *Ketchum v. Moses*, 24 Cal.App. 1122, 1135 (2001). Considerations of the factors the courts rely upon also establish the fee award here is justified.

In deciding whether to apply a multiplier, the Court may consider a variety of factors, including "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; [and] (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award." *Serrano III*, 20 Cal. 3d at 49. A court may also augment the lodestar based on the result achieved by counsel. *See Lealao*, 82 Cal.App.4th at 26 (listing "results obtained" as a factor courts can consider in setting multiplier).[12]

The above list of factors is neither mandatory nor exclusive. "[N]either in *Serrano III* nor in any other opinion has our Supreme Court carved the factors used in that case into concrete or barred consideration of other relevant and non-duplicative factors; nor have the courts of appeal sought to do so." *Lealao*, 82 Cal. App. 4th at 40 (footnotes omitted). "[T]here is 'no mechanical formula [that] dictate[s] how the [trial] court should evaluate these factors. Instead it ha[s] wide

[12] See, e.g., *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 (2009) which cited the following factors: (1) The risks presented by the litigation; (2) The novelty and difficulty of the questions involved; (3) The results obtained on behalf of the class; (4) The skill exhibited by counsel;(5) The continuing obligation to devote time and effort to the litigation; and (6) The extent to which the litigation precluded other employment by attorneys.

1  latitude in assessing the value of the attorney's services, and its decision [is] not to be

2  disturbed on appeal absent a manifest abuse of discretion.'" *Id.* at 41 (quoting

3  *Flannery v. California Highway Patrol*, 61 Cal.App.4th 629,639 (1998)).

4        **1.**    <u>**Plaintiffs Counsel Conferred A Significant Benefit On A Large**</u>

5                <u>**Class Of Persons.**</u>

6       Plaintiffs counsel negotiated a favorable settlement that confers significant

7  benefits on a large number of people while addressing an issue of societal importance

8  - defective automobiles. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553,578

9  (2004). Current or former owners of some 57,900 Class Vehicles are potentially

10 affected by the settlement, which alleges that the 2001-2005 Boxster and 911

11 Porsche vehicles (non-turbo) suffer from a defect in the IMS which may require

12 repair of engine damage or replacement of the engine due to the failure of the IMS.

13 (See Keough Decl. (attesting to notice being mailed to 235,000 potential class

14 members).)

15      Although the issue of whether the IMS constitutes a safety defect has been

16 hotly disputed, Defendant has notified consumers of this problem and has agreed to

17 pay for the cost of IMS related engine damage or replacement based on the

18 reimbursement schedule agreed to.[13]

19      Further, as more fully discussed in Plaintiffs motion for final approval, class

20 members have reacted positively to the settlement. Class Members thus have

21 recognized the value of the benefit this settlement provides them. In short, the

22 settlement negotiated by Plaintiffs' counsel provides the entire class virtually all of

23 the relief that any court could award. By achieving this result sooner rather than later,

24 the settlement has not only avoided the risk and expense of trial, it prevented further

25 harm to class members by promptly providing them notice of the issue and an oppor-

26 ───────────────

27 [13] Plaintiffs' expert estimates that the value of the settlement is $5,957,740. Johns
    Declaration, ¶¶ 34-42.

28

1920078.1   08000/00944

1  tunity to obtain reimbursement. Had the litigation continued through trial and the

2  appellate process, class members might not have received relief for years, if at all.

3      **2.**    **Class Counsel Displayed Skill In Representing Plaintiffs' Claims**

4               **and In Negotiating the Settlement.**

5        Class Counsel displayed skill in achieving an excellent result without requiring

6  the Court to spend its time deciding either a class certification motion or the final

7  merits of the case. The California Court of Appeal has held that the promptness of

8  settlement cannot be used to justify a refusal to apply a multiplier "without

9  exacerbating the disincentive to settlement promptly inherent in the lodestar

10  methodology." *Lealao*, 82 Cal.App.4th 19 at 52. "Considering that our Supreme

11  Court has placed an extraordinarily high value on settlement ... it would seem

12  counsel should be rewarded, not punished, for helping achieve that goal, as in federal

13  courts." *Id.*

14      **3.**    **Class Counsel Bore Considerable Risk and Forewent Employment**

15               **Opportunities.**

16        Plaintiffs' counsel bore the risk of investigating and prosecuting this case,

17  thereby giving up more secure employment opportunities. (Harris Decl. at ¶ 45.)

18  Under California law, contingent risks and foregone employment opportunities can

19  justify multiplying the lodestar fee. *Serrano*, 20 Cal. 3d at 49. A contingent fee

20  should exceed a non-contingent fee because "[i]n addition to compensation for the

21  legal services rendered, there is the raison d'etre for the contingent fee: the

22  contingency. The lawyer on a contingent fee contract receives nothing unless the

23  plaintiff obtains a recovery." *Cazares v. Saenz*, 208 Cal.App.3d 279, 288 (1989).

24  "Thus, in theory, a contingent fee in a case with a 50 percent chance of success

25  should be twice the amount of a non-contingency fee for the same case." *Id.* These

26  cases implement a well-understood economic principle: "A lawyer who both bears

27  the risk of not being paid and provides legal services is not receiving the fair market

28  value of his work if he is paid only for the second of these functions. If he is paid no

1 more, competent counsel will be reluctant to accept fee award cases." Leubsdorf, *The*

2 *Contingency Factor In Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981).

3      Here, the risks in automobile defect litigation establish the risk counsel faced

4 in this case. See, e.g., *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th

5 824 (2006) (affirming judgment of dismissal on demurrer); *In Re General Motors*

6 *Dex-Cool Products Liability Litigation*, 241 F.R.D. 305 (S.D. Ill. 2007) (nationwide

7 class certification denied in a case involving defective intake manifold gaskets; class

8 counsel ultimately achieved a nationwide settlement after spending 58,500 hours and

9 $1.55 million in litigation costs to certify state classes in three state courts and

10 prepare those cases for trial); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019

11 (7th Cir. 2002) (nationwide class certification denied in Ford Explorer roll-over

12 litigation, which ultimately settled for coupons after 7 years of litigation, including a

13 50-day bench trial in California state court); *Edwards v. Ford Motor Co.*, 2012 WL

14 2866424 (S.D. Cal. June 12, 2012) (certification denied under California law in

15 automobile defect case). [14]

16      In this case, Plaintiffs faced considerable risk in their attempt to obtain relief

17 for all affected consumers. There was no government recall or notice by defendant

18 that preceded the case, and the warranties on many of the vehicles had already

19 expired. Thus, Plaintiffs bore the risk that their lawsuit would not succeed, but

20 continued with their pre and post-litigation investigation and convinced Porsche in

21 opposing its motion to dismiss that it would not be able to extract itself from the

22 litigation. Moreover, Plaintiffs bore the risk that their contemplated class certification

23 motion would not have been successful, or that Defendant would succeed on its other

24 ────────

25 [14] See, also, *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1 (Penn. Dec. 2,
2011) (nearly 12 years after the commencement of the action—following, among

26 other things, a contested motion for class certification, trial, post-trial motions, and
appeal to the Superior Court—the Supreme Court of Pennsylvania affirmed an award

27 of $600 to each class member which was based on the class vehicle having a useful
life of 100,000 miles);

28

1  defenses, such as the absence of a safety defect, or the statute of limitations.

2  **E.    Multipliers Awarded By Both California And Federal Courts**

3  **Demonstrate That The Fee Is Reasonable**

4  In many cases, a positive multiplier is granted when a court awards fees. See

5  *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 551; (2009) (affirming a 1.75

6  multiplier); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (affirming

7  multiplier of 2.50); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255

8  (2001) ("Multipliers can range from 2 to 4 or even higher."); *Craft v. County of San*

9  *Bernardino*, 2008 US. Dist. LEXIS 27526 (C.D. Cal. Apr. 1, 2008) (applying 5.2

10  multiplier).

11  Accordingly, here the fee award is reasonable since the court need not even

12  consider enhancing it with a multiplier.

13  **F.    The Additional Work Required Of Class Counsel Will Also Operate As A**

14  **Negative Multiplier**

15  The requested fee assumes Class Counsel will continue work on the claims

16  process, addressing class members concerns, contesting notices of deficiency and

17  rejection and handling appeals of any adverse determinations by PCNA. This is a

18  reasonable assumption based on the terms of the settlement and the work performed

19  to date. This additional work required of Class Counsel will effectively ensure that

20  Class Counsel's fee will represent a negative multiplier (along with the deduction of

21  costs, and the referral fee to be paid) and provides further justification for the award

22  of the fee sought.

23  **G.    A Cross-Check Based On The Percentage Of The Fund Analysis Also**

24  **Establishes The Fee Is Reasonable**

25  Here, a cross-check under the percentage of the fund analysis also supports the

26  fee requested. "Under the percentage method, the court simply awards the attorneys a

27  percentage of the funds sufficient to provide plaintiffs' attorneys with a reasonable

28  fee. *Wash. Pub. Power Supply Sys. Litig.*, 19 F.3d 1291,1295 n.2 (9th Cir. 1994).

1    To date, approximately 3,275 claims have been received, with a claims amount

2    totaling $4,155,536.08. Presently, a total of 475 pre-notice claims and 33 post-notice

3    claims[15] have been approved for payment in the amount of $2,178,377. Moreover,

4    Plaintiffs estimate that the total value of the settlement is $5,957,740, including

5    anticipated future claims, deficiencies which are cured, and future repair costs

6    averted by virtue of the notice.[16] (Harris Decl., ¶¶ 24-27; Keough Decl., ¶¶ 5, 9-12;

7    Johns Decl., ¶¶ 1-42.)

8    Accordingly, Class Counsel's requested attorney fees of $950,000 (after

9    deduction of costs of $48,644.64) amounts to approximately 14.5% percent of the

10   $5,957,740 benefit to the class, excluding the $370,000 in claims administration

11   expenses. *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) (holding

12   the value of the settlement includes not only cash payment, but all monetary benefits

13   to the class); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (holding that the

14   value of the settlement should include the cost of notice and administration costs to

15   the class members.)

16   The Ninth Circuit has determined that 25% of the common fund is the

17   benchmark for fee awards in class action cases. *Vizcaino v. Microsoft Corp*, 290 F.3d

18   1043, 1049 (9th Cir. 2002). Hence, the percentage-of-the-fund cross check supports

19   Class Counsel's request of $950,000 for attorneys' fees and costs as being eminently

20   reasonable in light of the value of the Settlement to the Class.

21   **H.    The Incentive Award To The Class Representatives Is Appropriate**

22   In addition to awarding Class Counsel the requested fees and expenses, the

23

24   [15] PCNA has approved three additional post-notice claims in the amount of
25   $61,460.15. PCNA also has advised counsel for Plaintiffs that an additional 11 post
     notice claims have been made, which Plaintiffs estimate are worth approximately
26   $187,000 to $220,000. (Harris Decl., ¶ 24.)

27   [16] This does not include the present and future amount of claims administration
     expenses of $370,000. (Harris Decl., ¶ 24; Keough Decl., ¶¶ 13-14.)

28

1  Court should also approve a $3,750 incentive award for each plaintiff. In *Van Vraken*

2  *v. Atlantic Richfield Co.*, 901 F. Supp. 294 (ND. Cal. 1995) the court stated that in

3  deciding whether to make an incentive award, courts may consider criteria such as

4  "(1) the risk to the class representative in commencing suit, both financial and

5  otherwise; (2) the notoriety and personal difficulties encountered by the class

6  representative; (3) the amount of time and effort spent by the class representative; (4)

7  the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by

8  the class representative as a result of the litigation." *Id.* at 299.

9         Here, Plaintiffs voluntarily assumed the responsibilities of bringing and

10 prosecuting the action on behalf of all others similarly situated, and devoted time and

11 effort to keeping themselves informed of the litigation. Plaintiffs assisted in the

12 investigation of the case, provided Class Counsel with information, regularly

13 communicated with Class Counsel, and were involved in the progress of the

14 litigation. (See, declarations of Plaintiffs.)

15        Plaintiffs thus respectfully request that the Court approve the requested

16 incentive awards, which are reasonable in light of Plaintiffs effort and the ultimate

17 relief to the Class. *See In re Mega Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

18 2000) (awarding named plaintiff $5,000); *Hopson v. Hanesbrands Inc.*, CV-08-0844

19 EDL, 2009 U.S. Dist. LEXIS 33900, at **27-28 (N.D. Cal. Apr. 3, 2009) ("In

20 general, courts have found that $5000 incentive payments are reasonable."); *Villegas*

21 *v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 114597, at *18 (N.D. Cal. Aug.

22 8, 2012) ("[T]he Settlement provides for an incentive award to the Plaintiff in the

23 amount of $10,000. In this District, a $5,000 incentive award is presumptively

24 reasonable."); *Carter v. Anderson Merchandisers, LP*, EDCV 08-0025-VAP OPX,

25 2010 U.S. Dist. LEXIS 55629, at *17 (C.D. Cal. May 11, 2010) (same).

26 **IV.   CONCLUSION**

27        The requested attorneys' fees, costs and incentive awards will not reduce the

28 Class' recovery.  Rather, these funds will be paid separately by PCNA.  Moreover,

1   these sums are reasonable and supported by the time spent, the effort of Counsel and

2   the result achieved. For these reasons and those stated above, Plaintiffs respectfully

3   request that the Court grant their application for an award of $950,000 in attorneys

4   fees and expenses, and $15,000 in incentive awards for Plaintiffs efforts as class

5   representatives.

6

7   Dated: December 23, 2013            KNAPP, PETERSEN & CLARKE

8

9                                       By: /s/ Stephen M. Harris

10                                          Stephen M. Harris
                                           Attorneys for Plaintiffs
11                                          BRUCE EISEN, KYMMBERLI R.
                                           UREDA, LEE SMITH, and
12                                          FREDERICK NELSON-
                                           BONEBRAKE, individually, and on
13                                          behalf of a class of similarly situated
                                           individuals

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS FEES, COSTS, AND CLASS
REPRESENTATIVE ENHANCEMENTS: MEMORANDUM OF POINTS AND AUTHORITES
1920078.1   08000/00944